**LEVIN, FISHBEIN, SEDRAN & BERMAN**
**Michael M. Weinkowitz, Esquire**
**Attorney Id. No. 76033**
**510 Walnut Street, Suite 500**
**Philadelphia, PA 19104**
**(215) 592-1500 - phone**
**(215) 592-5663 - fax**
**Attorneys for Plaintiff**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARION ROSE LEONE,** | : |
| *Plaintiff*, | : |
| vs. | : CIVIL ACTION |
| **CHATTEM, INC., RITE-AID OF PENNSYLVANIA, INC., THOMPSON MEDICAL COMPANY, INC AND THE DELACO COMPANY,** | : NO. 02-CV-3218 : : JURY TRIAL DEMANDED |
| *Defendant(s).* | : |

## PLAINTIFF'S MOTION FOR REMAND

Plaintiff, Marion Rose Leone, by and through her undersigned attorneys, files this Motion for Remand, pursuant to 28 U.S.C. § 1441 (a) and 1446(a), in response to the Notice of Removal filed by defendants, Chattem, Inc. and The Delaco Company, successor by merger to the Thompson Medical Company, Inc. ("collectively "Defendants"). This cases should be remanded to the Court of Common Pleas of Philadelphia County, Pennsylvania because diversity jurisdiction exists since the non-diverse defendant, Rite-Aid of Pennsylvania, Inc. (hereinafter referred to as "Rite-Aid") was

not fraudulently joined. The specific grounds for remand, are as follows:

I. **PROCEDURAL HISTORY**

1. Plaintiff incorporates herein, as if set forth in their entirety, paragraphs 1-4 of Defendant's Notice of Removal which accurately reflect the procedural history up to the filing of defendants' Notice of Removal on May 24, 2002.

II. **LEGAL ARGUMENT**

   A. **The Defendants Have A Heavy Burden of Proving Removal Jurisdiction Under A Standard Requiring Strict Construction And The Resolution of All Doubts Against Removal**

2. Defendants have the right to remove a cause of action from state court to a federal court but only where the federal district court would have been able to exercise original jurisdiction over the matter if it had been filed there. 28 U.S.C. § 1441(a). Original jurisdiction is limited to cases involving a cause of action arising under federal law or where the parties are diverse and the amount in controversy is at least $75,000.00. As set forth in the paragraphs below, defendants have a heavy burden which they have not met.

3. It is well established that the burden of proving removal jurisdiction is on the removing party, and removal jurisdiction is to be strictly construed. Wilson v. Republic Iron & Steel Co. 42 S.Ct. 35, 257 U.S. 92, 66 L.Ed. 144 (1921); Sun Buick, Inc. v. Saab Cars USA. Inc., 26 F.3d 1259 (3rd Cir. 1994) (unlike federal officer removal statute, general removal statute is construed strictly); Meritcare Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214 (3rd Cir. 1999); In re Comcast Cellular Telecommunications Litigation, 949 F.Supp. 1193 (E.D.Pa. 1996); Nero v. Amtrak, 714 F.Supp. 753 (E.D.Pa. 1989); Samuel-Bassett v. Kia Motors Am., Inc., 143 F.Supp.2d 503 (E.D.Pa. 2001); Bell Atlantic Mobile v. Zoning Bd., 138 F.Supp.2d 668 (E.D.Pa. 2001).

4.	Not only does the principle of strict construction apply in determining whether a case should be removed, but the court must resolve all doubts, on the question, against accepting removal jurisdiction. In re Comcast Cellular Telecommunications Litigation, 949 F.Supp. 1193 (E.D.Pa. 1996); Landman v. Borough of Bristol, 896 F.Supp. 406 (E.D.Pa. 1995). See also Toanone v. Williams, 405 F.Supp. 36 (E.D.Pa. 1975)(in interpreting the plaintiffs pleading in connection with a proceeding relative to a motion to remove from state to federal court on the ground of separate and independent claims, specific allegations control over general, and all doubts arising from defective, ambiguous, and inartful pleadings should be resolved in favor of the retention of state court jurisdiction).

5.	Defendants incorrectly contend that Plaintiff has fraudulently joined Rite-Aid, a retail seller of the over-the-counter product, Dexatrim, which contained PPA, a product removed from the market by the Food and Drug Administration ("FDA") on November 6, 2000. Defendants incorrectly contend that Plaintiff will not be able to establish any causes of action against Rite-Aid, a Pennsylvania Corporation, in state court because:

    a)	All of Plaintiff's claims against Rite-Aid are barred by the applicable statute of limitations; and,

    b)	The amount in controversy in excess of $75,000.00.

Plaintiff concedes that the amount in controversy is in excess of $75,000, however, for the reasons set forth in detail below, she denies that her claims against Rite-Aid are time-barred by the applicable statute of limitations.

6.	As is argued in detail below, Defendants are improperly using the law of removal to obtain summary judgment from this Court in a case properly within the jurisdiction of the court of

the Commonwealth of Pennsylvania. For the reasons set forth below, Defendants' arguments should be rejected and this case should be remanded back to state court.

  **B.** **This Case Should be Remanded Because Diversity Jurisdiction Does Not Exist Where A Non-Diverse Defendant, Such as Rite-Aid, Was Not Fraudulently Joined**

  7. The party alleging fraudulent joinder bears the burden of persuasion, which is very stringent. <u>Lathrop, Shea & Henwood Co. v. Interior Constr. & Improvement Co.</u>, 30 S.Ct. 76, 215 U.S. 246, 54 L.Ed. 177 (1909); <u>Batoff v. State Farm Ins.</u> Co., 977 F.2d 848 (3rd Cir. 1992). The defendant must meet the strict standard that plaintiffs claim was insubstantial and frivolous for removal and to avoid remand. <u>Stanley v. Exxon Corp.</u>, 824 F.Supp. 52 (E.D.Pa. 1993).

  8. A defendant's failure to satisfy its burden, as is the case here, requires remand. <u>Moorco Int'l, Inc. v. Elsag Bailey Process Automation, N.Y.</u>, 881 F.Supp. 1000 (E.D. Pa. 1995); <u>Richardson v. Exxon Corp.</u>, 491 F.Supp. 201 (E.D.Pa. 1980).

  **1)** **A Clearly Bona Fide Dispute About The Running of the Statute of Limitations Under Pennsylvania's Discovery Rule Does Not Amount To Fraudulent Joinder**

  **a.** **Pertinent Facts and Procedural Background**

  9. As alleged in Plaintiffs Short Form Complaint attached to defendants' Notice of Removal as Exhibit "A," Plaintiff is a resident of the Commonwealth of Pennsylvania (Defs. Exhibit "A," para 1). She purchased Dexatrim containing PPA from Rite-Aid, a Pennsylvania Corporation, at the store located in Milford, Pennsylvania, within the three week period prior to her stroke which occurred on July 2, 1997 (Defs. Exhibit "A," paras. 3 and 4). Plaintiff has alleged that she first learned that her stroke was related to PPA ingestion on or about November 6, 2000 (Defs. Exhibit "A," para. 4(a).

10. As set forth in Plaintiffs' Third Amended Long Form Complaint attached to Defendants' Notice of Removal as Exhibit "B," it was not until November 6, 2000, that the FDA, officially recommended that all makers of OTC products that containing PPA voluntarily remove this chemical from those products. By correspondence of the same date, the FDA urged all manufacturers and sellers of OTC products containing PPA to immediately stop the distribution and sale of those products. On or about the same date, many of pharmaceutical manufacturers throughout the country issued press releases announcing that they would cease the shipping of products containing the drug PPA (Defs. Exhibit "B," paras. 33 and 34).

11. The FDA's official recommendation on November 6, 2000 was in reliance, in part, upon the findings of the Yale Hemorrhagic Stroke Study ("the Yale Study") which was a study analyzed 2000 adults aged 18 to 49, including 702 individuals who were hospitalized with subarachnoid or intercerebral hemorrhage without prior history of stroke (Defs. Exhibit "B" paras 28. The purpose of the Yale Study was to investigate the link between PPA and strokes. While the study was ongoing, the manufacturers were able to continue selling PPA products (Defs. Exhibit "B" at 29).

12. The Yale Study's results revealed that stroke patients were 50 percent more likely than control subjects-those who did not suffer a stroke-to have been exposed to PPA within three days of their incident. Those who used PPA containing cough/cold remedies were approximately 23 percent more likely to have had a stroke during the study period (Defs. Exhibit "B," para. 31). It was not until October 19, 2000, that an advisory panel advised the FDA that PPA should be banned as exposure to it increased the risk of stroke. The 15-member panel voted overwhelmingly (13 in favor) that PPA was unsafe, and recommended to the FDA that PPA be removed from the marketplace. That finding

and recommendation was the result of the Yale Study (Defs. Exhibit "B," para. 32).

13.     The Yale Study's Final Report was issued on May 10, 2002 (Exhibit "1") and was not reported in the New England Journal of Medicine until December 21, 2002 (Exhibit "2").

14.     Plaintiff filed suit against Defendants in state court on April 30, 2002 (Defs. Exhibit "A.")

        **b.**       **Under Pennsylvania's "Discovery Rule" The Applicable Statute of Limitations Were Tolled And Thus Plaintiff Has A Colorable Claim Against Rite-Aid and Her Motion Should Be Granted**

15.     The process of determining whether the defendant's burden of establishing fraudulent joinder has been met, requires a judicial examination of the facts and law in the light most favorable to the plaintiff. See Moorco Int'l, Inc., 881 F.Supp. at 1009, quoting Abels v. State Farm Fire & Casulty, 770 F.2d 26. (3rd Cir. 1985).

16.     One Court has framed the district judge's inquiry as follows: "the federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant? Poulos v. Naas Foods, Inc., 959 F.2d 69 (7th Cir. 1997). Accordingly, it is well established that in general there need be only a possibility that a right to relief exists under the governing law to avoid a finding of fraudulent joinder by the court. McAllister v. Chesapeake & 0. Ry. Co., 1917, 37 S.Ct. 274, 243 U.S. 302, 61 L.Ed. 735; Boyer v. Snap-On Tools Corp., 913 F.2d 108 (3d Cir. 1990), certiorari denied 111 S.Ct. 959, 498 U.S. 1085, 112 L.Ed.2d 1046.

17.     Normally under Pennsylvania law, a claim for personal injury, including negligence, strict liability and punitive damages, must be brought within two years of the occurrence of the injury. 42 Pa. C.S.A. § 5524(2). Normally a claim for breach of implied and express warranty are governed by a four-year statute of limitation. 13 Pa. C .S .A. § 2725.

18.     Notwithstanding the applicable statute of limitations, Pennsylvania has adopted a "discovery rule" which tolls the running of the statute of limitations until 'the plaintiff knows, or reasonably should know: (1) that he has been injured, and (2) that his injury has been caused by another party's conduct.'" In Re TMI, 89 F.3d 1106, 1116 (3d Cir. 1996). The determination of when the statute of limitations begins to run **is a question of fact for the jury**. Technology Based Solutions, Inc. v. Electronic College, Inc., 168 F.Supp. 2d 375 (E.D.Pa. 2001); Speicher v. Dalkon Shield Claimants Trust, 943 F.Supp. 554 (E.D.Pa. 1996).

19.     With respect to injuries or a disease for which the causes are not readily apparent, Pennsylvania statute of limitations does not begin to run against prospective plaintiff until such time that plaintiff either knew or had reason to know of the injury, operative cause of the injury, and causal relationship between the injury and the operative conduct. Neal v. Carey Canadian Mines, Ltd., 548 F.Supp. 357 (E.D.Pa. 1982).

20.     Plaintiff did not discover, nor could she have discovered, that her stroke was caused by the ingestion of PPA until November 6, 2000, the date of the FDA recall. Thus, plaintiff's statute of limitations was tolled until that date. She timely filed within two years of the recall, on April 30, 2002, which was seven (7) months before November 6, 2002 and two (2) years and seven (7) months before November 6, 2004, four years post-recall. Alternatively, even if defendants were to argue that plaintiff should have discovered that her stroke was caused by the ingestion of PPA upon publication of the Yale Study's Final Report, on May 10, 2000, plaintiff filed her Complaint before May 10, 2002 and May 10, 2004.

21.     Since the discovery rule tolls the statute of limitations in this case, plaintiffs claims are not time-barred because they were not filed on or before July 2, 1999 or on July 2, 2001, as

defendants allege. Thus, Plaintiff has a colorable claim against Rite-Aid, who was not fraudulently joined.

      **c.**    **A Reasonable Jury Could Conclude that Plaintiff Did Not Know Or Reasonably Should Not Have Known that Her Injury Was Caused by The Ingestion of PPA**

      **1-**    **The Language of The Warning On The Dexatrim Packaging And In The Physician's Desk Reference ("PDR") Is Ambiguous and Does Not Warn that PPA Causes Strokes**

22.    Although plaintiff has sufficiently demonstrated that she has a colorable claim against Rite-Aid, she will address defendants' meritless arguments further. The warning that allegedly appeared on the product packaging and in the PDR is hardly "unambiguous," as defendants argue. On the contrary, the language is unclear, and equivocal, at best. The alleged warning itself does not warn prospective users that PPA, in fact, causes strokes. On the contrary, it merely states that "stroke . . . *might be* associated with the ingestion of phenylopropanolamine." (Defs. Notice of Removal, para. 16). A reasonable jury could conclude that this ambiguous language, which does not state that PPA causes strokes, was insufficient to put a prospective user on notice that strokes were, in fact, caused by PPA.

      **2-**    **Merely Because There Were "Sources" Available to the Plaintiff Does Not Mean That She Should Have Discovered The Cause of Her Stroke Earlier Than She Did**

23.    Setting aside the fact that the warnings that defendants point to are so ambiguous on the issue of causation that they are insufficient to put a prospective user on notice, the defendants have failed to cite a single case, Pennsylvania or otherwise, which supports their contention that merely because there were sources available to the plaintiff, that she should have discovered the cause of her

stroke earlier than she did. The reasons the defendants do not cite such a case is because none exists.

24. Cases which the defendants have cited, in support of their argument that Rite-Aid was fraudulently joined because the statute of limitations have expired, are so readily distinguishable that they not only do not support removal but they support that this case should be remanded to state court. For instance, Defendants have cited <u>Ritchey v. Upjohn Drug Company</u>, 139 F.3d 1313, 1320 (9th Cir. 1998), however, in <u>Ritchey</u> there was no discussion of the tolling of the statute of limitations under a discovery rule like the one that Pennsylvania recognizes. Additionally, defendants have cited <u>Aserinsky v. Wyeth Laboratories, Inc</u>. No. 99-20078, 1999 WL 554608 (E.D.Pa. June 29, 1999). The court in <u>Aserinsky</u> was not considering the tolling of the statute of limitations under the discovery rule but rather found that the statute of limitations was not tolled based on the filing of a state court class action.

25. Defendants have not met their heavy burden. They have not presented evidence that plaintiff was herself aware that the ingestion of PPA caused her stroke earlier than the date that PPA was removed from the market by the FDA. Defendants have not proffered evidence that plaintiff read, or should have read, the PDA. Defendants have not proffered evidence that the ambiguous warnings allegedly on the packaging, were in fact understood by plaintiff or even seen by plaintiff.

26. Defendants are in the same position as Rite-Aid, and thus they are essentially using removal law to obtain summary judgment from a federal court in a case properly within the jurisdiction of the state court. The Court should not condone such an abuse of the removal law.

### III. CONCLUSION

27. In sum, the defendants in this case do not allege that Plaintiff committed fraud in her pleadings, so this Court is to determine the fraudulent joinder issue by looking at whether there is a possibility that the Plaintiff can establish any cause of action against Rite-Aid. In making this

determination, the court is to evaluate all of the facts as alleged in the Plaintiff's Complaint in the light most favorable to the Plaintiff. The court is also to examine the relevant state law issues and resolve all of those issues in favor of the Plaintiff. In applying these standards, it is clear that under Pennsylvania's "discovery rule" plaintiff has a number of colorable claim against Rite-Aid which are not barred by the applicable statute of limitations.

**WHEREFORE**, plaintiff respectfully requests that her motion be granted and this case be promptly remanded to the Court of Common Pleas of Philadelphia Count, Pennsylvania.

Respectfully submitted,

**LEVIN, FISHBEIN, SEDRAN & BERMAN**

_____
MICHAEL M. WEINKOWITZ, ESQUIRE
510 Walnut Street, Suite 500
Philadelphia, PA  19106
(215) 592-1500
Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

      I, Michael M. Weinkowitz, Esquire, do hereby certify that on _____, 2002, I served a true and correct copy of the foregoing Plaintiff's Motion for Remand by first-class mail upon the following:

Gordon B. Simmons, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
1845 Walnut Street
Philadelphia, PA 19103

*Attorneys for Defendant Rite Aid of Pennsylvania, Inc.*

Alan Klein, Esquire
Thomas E. Wallerstein, Esquire
Hangley Aronchick Segal & Pudlin
One Logan Square, 27th Floor
Philadelphia, PA 19103

*Attorneys for Defendants Chattem, Inc. and the Delaco Company, as successor by merger to Thompson Medical Company Inc.*

**LEVIN, FISHBEIN, SEDRAN & BERMAN**

_____
MICHAEL M. WEINKOWITZ, ESQUIRE
510 Walnut Street, Suite 500
Philadelphia, PA 19106
(215) 592-1500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| MARION ROSE LEONE, | : |
| *Plaintiff*, | : |
|  | : CIVIL ACTION |
| vs. | : |
|  | : |
| CHATTEM, INC., RITE-AID OF PENNSYLVANIA, INC., THOMPSON MEDICAL COMPANY, INC AND THE DELACO COMPANY, | : NO. 02-CV-3218 |
|  | : |
|  | : JURY TRIAL DEMANDED |
| *Defendant(s)*. | : |

# ORDER

**AND NOW**, this _____ day of _____, 2002, upon consideration of the Notice of Removal pursuant to 28 U.S.C. §§ 1441 and 1446 of Defendant Chattem, Inc. and the Delaco Company, successor by merger to Thompson Medical Company, Inc. and Plaintiff's Motion for Remand, and all responses thereto,

**IT IS HEREBY ORDERED**, that Plaintiff's Motion for Remand is **GRANTED,** and this action is to be immediately remanded to the Court of Common Pleas of Philadelphia County, Pennsylvania.

**SO ORDERED:**

_____
U.S.D.J.

Case 2:02-cv-03218-BMS    Document 3    Filed 06/06/2002    Page 13 of 13